UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

MUKTADIR KHAN, and JULIE LIU *on behalf of themselves and all others similarly situated*,

Plaintiffs,

-against-

NALANE GREEN SOLUTIONS NYC LLC d/b/a NALANE GREEN SOLUTIONS, and MATHATA MPELA, an individual,

Defendants.

-----------------------------------------------------------X

Case No. 1:26-cv-2459

**COLLECTIVE ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs, MUKTADIR KHAN ("Plaintiff Khan" or "Mr. Khan"), and JULIE LIU ("Plaintiff Liu" or "Ms. Liu") (collectively, "Plaintiffs"), on behalf of themselves, individually, and on behalf of all others similarly-situated ("Collective Class" and/or "FLSA Plaintiffs"), by and through their attorneys BELL LAW GROUP PLLC complaining of Defendants NALANE GREEN SOLUTIONS NYC LLC d/b/a NALANE GREEN SOLUTIONS (referred to as "Defendant NALANE" or the "Company"), and MATHATA MPELA ("Defendant MPELA" or "Mr. Mpela") (collectively, "Defendants"), allege upon their own knowledge as to themselves, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

This case is brought against the Defendants: (1) pursuant to the Fair Labor Standards Act of 1938 ("FLSA") as amended, 29 U.S.C. §§ 201, et seq. for Defendants' willful failure to pay Plaintiffs, and all others similarly situated, wages for all hours worked; (2) pursuant to the New York Labor Law, Article 6 ("NYLL"), for Defendants' willful failure to pay Plaintiffs, and all others similarly situated, wages for all hours worked; (3) pursuant to NYLL § 195(1) for

Defendants' willful failure to provide Plaintiffs and others similarly situated with accurate wage notices at any time during their employment; (4) pursuant to NYLL § 195(3) for Defendants' willful failure to provide Plaintiffs and others similarly situated with wage statements and/or paystubs at any time during their employment; (5) pursuant to NYLL § 195(4) for Defendants' willful failure to maintain adequate and accurate records; (6) Breach of Contract; (7) Quantum Meruit/Unjust Enrichment; (8) Promissory Estoppel; and (9) Fraudulent Inducement.

## NATURE OF CASE

1. Defendant NALANE is an eco-focused company that "drive[s] innovation in sustainability with solutions that blend renewable energy, smart agriculture, and clean transportation."[1]

2. Defendant NALANE is "committed to empowering communities through eco-friendly initiatives that enhance public spaces and promote inclusive socio-economic growth."[2]

3. Part of Defendant NALANE's mission is to "drive economic growth…" through "job creation."[3]

4. Defendant NALANE offers a "unique partnership model" with school districts, community organizations, urban facilities, and academic institutions, whereby Nalane "covers the initial investment to set up the necessary infrastructure and training"[4] with partner organizations.

---

[1] Nalane, https://nalanegreensolutions.com/about (last visited Mar. 18, 2026).
[2] Id.
[3] Id.
[4] On its website, Defendant Nalane lists its cost to partner as "$0," *see* https://nalanegreensolutions.com/partnerships (last visited Mar. 18, 2026).

5. As one of its "community initiatives," Defendant NALANE offers a "Green Apprentice Program" that "focuses on providing *job opportunities* for youth, women, and disabled individuals"[5] (emphasis added).

6. Plaintiffs were employed by Defendants as Mentor/Supervisors under Defendant NALANE's Green Apprentice Program. However, Defendants failed to: i) pay Plaintiffs the proper minimum wage rate for all hours worked; (ii) pay Plaintiffs for all hours worked; (iii) provide accurate wage notice and wage statements; and (iv) honor Plaintiffs' terms of employment.

7. This lawsuit seeks to recover unpaid wages and statutory penalties for Plaintiffs and other similarly situated workers who have worked for Defendants as Mentor/Supervisors.

8. Plaintiffs now bring this action on behalf of themselves and all others similarly situated for Defendants violations of: i) the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"); ii) New York Labor Law Article 6 §§ 191 *et seq*. ("NYLL"); iii) NYLL Article 6 §§ 195 *et seq*.; iv) Breach of Contract; v) Quantum Meruit/Unjust Enrichment; vi) Promissory Estoppel; vii) Fraudulent Inducement; and viii) any other cause(s) of action that can be inferred from the facts set forth herein.

9. Plaintiffs bring this action on behalf of themselves and all similarly situated employees, pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq*., and specifically the collective action provision of the FLSA, 29 U.S.C. § 216(b), to remedy Defendants' violations of the wage and hour provisions of the FLSA, as such violations have deprived Plaintiffs and other similarly situated workers of their lawfully-earned wages.

---

[5] Nalane, https://nalanegreensolutions.com/services (last visited Mar. 18, 2026).

10. Plaintiffs also bring this action on behalf of themselves and a class of similarly situated former employees of Defendants, pursuant to Fed. R. Civ. P. 23, for violations of NYLL Article 6 §§ 190, *et seq*. and New York contract law.

**JURISDICTION AND VENUE**

11. The jurisdiction of the Court over this controversy is based upon 28 U.S.C. §1331, as this case presents a federal question under the FLSA.

12. The Court also has supplemental jurisdiction over this case pursuant to 28 U.S.C. § 1367(a), as Plaintiffs' claims arising under the NYLL form part of the same case and controversy.

13. At all times relevant herein, Plaintiff Khan was and still is a resident of Queens County in the Eastern District of New York of the United States District Court.

14. At all times relevant herein, Plaintiff Liu was and still is a resident of Queens County in the Eastern District of New York of the United States District Court.

15. The unlawful practices alleged herein took place at Transit Tech High School, 1 Wells Street, Brooklyn, New York 11208 within the Eastern District of New York of the United States District Court.

16. This Court is thereby proper venue under 28 U.S.C. §1391.

**DEMAND FOR JURY TRIAL**

17. A jury trial is requested on all claims alleged herein.

**PARTIES**

18. At all times relevant herein, Plaintiff Khan was an "employee" of Defendants as defined by FLSA and NYLL.

19. At all times relevant herein, Plaintiff Liu was an "employee" of Defendants as defined by the FLSA and NYLL.

20. Plaintiffs are both covered employees within the meaning of the FLSA, 29 U.S.C. § 201, *et seq.*, and the NYLL § 160 *et seq.*

***Nalane Green Solutions***

21. At all times relevant herein, Defendant NALANE was and is a domestic limited liability company, with a principal place of business located at 467-469 Dekalb Avenue, Brooklyn, New York 11205, in Kings County.

22. At all times relevant herein, Defendants were and are engaged in interstate commerce within the meaning of the FLSA, as they purchase and routinely work with products provided by outside vendors that originated in states other than New York.

23. At all times relevant herein, Defendants' employees, including the Plaintiffs and other similarly situated employees, were individually engaged in interstate commerce, as on a daily basis, they used and worked with goods and products that have been, and continue to be, moved in interstate commerce.

24. At all times relevant herein, Defendants employed employees, including Plaintiffs and those similarly situated, who regularly were engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of FLSA §§ 3(b), (g), (i), and (j).

25. At all times hereinafter mentioned, Defendants exercised control over the terms and conditions of Plaintiffs' employment, in that Defendants had the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv)

supervise work and control of the employees, including the Plaintiffs herein; and (v) otherwise affect the quality of the employees' work conditions and employment.

26. Defendants applied the same employment policies, practices, and procedures to Plaintiffs and all similarly situated employees, including policies, practices, and procedures with respect to payment of wages, records of hours, and the provision of wage notices and wage statements.

27. As such, Defendants collectively acted as Plaintiffs' "employer" as defined by the FLSA and NYLL.

***Defendant Mathata Mpela***

28. Defendant Mathata "Moe" Mpela ("Mr. Mpela") is the founder and executive director of Defendant Nalane.

29. Mr. Mpela exercises operational control as it relates to all employees including Plaintiffs and the Collective Action.

30. Mr. Mpela exercises the power to: fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees, including those of Plaintiffs and the Collective Action.

31. At all times, Mr. Mpela had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand any employees for performing their job duties improperly.

32. Mr. Mpela exercises sufficient control of the operations of the Plaintiffs so as to be an "employer" of Plaintiffs under FLSA 29 U.S.C. § 203(d), and NYLL 190(3).

33. At all times relevant herein, Mr. Mpela acted as the agent, officer, and alter ego of Defendant Nalane, and his acts and omissions described herein were performed within the scope of his authority and are attributable to Defendant Nalane.

34. At all times relevant herein, Defendant Nalane is independently liable for the conduct alleged herein, including the common law claims, as the entity on whose behalf all representations were made, for whose benefit Plaintiffs' labor was performed, and which directly received and retained the benefit of Plaintiffs' uncompensated work.

35. All Defendants are collectively referred to as "Defendants."

## FACTUAL ALLEGATIONS

### Nalane Green Solutions and Mathata Mpela
### (collectively, "Defendants")

36. On or around June 2025, Defendants offered Plaintiffs and other similarly situated workers jobs as Mentor/Supervisors.

37. Plaintiffs and other similarly situated workers were contacted directly via email or letter by Mr. Mpela with offers of employment for Defendants.

38. Offer emails and letters to Plaintiffs communicated an hourly rate would be paid for their work of between $22.00 to $27.00 per hour.

39. Plaintiffs and other similarly situated workers performed work for Defendants from June 2025 through August 2025.

40. Plaintiffs and other similarly situated workers worked for approximately 27 to 35 hours per week for Defendants from June 2025 through August 2025.

41. Plaintiffs and other similarly situated workers were never paid for any of their work.

42. Plaintiffs and other similarly situated workers repeatedly asked Mr. Mpela about their unpaid wages.

43. On at least two separate occasions in November 2025, Plaintiffs and other similarly situated workers held videotaped forums with Mr. Mpela, where he repeatedly admitted that he had not paid Plaintiffs.

44. During these videotaped forums, Mr. Mpela made numerous misrepresentations regarding Plaintiffs' payment for their wages, including, but not limited to, the claim that he had secured a grant from the New York State Energy Research and Development Authority ("NYSERDA") in October 2025, that was supposed to cover Plaintiffs' wages.

45. This promise was false, as the NYSERDA grant could not possibly have covered Plaintiffs' wages for several distinct reasons.

46. *First,* the subject grant -- the NYSERDA OJT Program (PON 3982) -- does not support workers hired by businesses *prior to approval* of an application to participate in the program and hire new workers. Indeed, the subject grant program expressly prohibits participation by workers hired before NYSERDA approves the applicable New Hire Application. The program provides that "[t]he entire New Hire Application process, including NYSERDA approval, must be completed before the employee starts work" and that "[n]ew hires that begin employment before NYSERDA approves the New Hire Application are NOT eligible." Plaintiffs and the FLSA Plaintiffs began work in June 2025, months before Mr. Mpela represented, in November 2025, that a NYSERDA grant had been secured in October 2025. Plaintiffs and the FLSA Plaintiffs were therefore categorically ineligible for coverage under the program from the outset of their employment.

47. *Second,* the subject grant was limited to reimbursement, not payment. Even if Plaintiffs and the FLSA Plaintiffs had been eligible, the NYSERDA OJT Program provides for reimbursement only, not advance payment of wages. The program expressly requires that participating businesses pay their employees their full wages before seeking any reimbursement from NYSERDA. Accordingly, the grant program Mr. Mpela identified could not serve as a source from which to pay Plaintiffs and the FLSA Plaintiffs their wages; at most, it could only reimburse Defendants after wages had already been paid in full. Defendants' representation that the grant would be used to pay Plaintiffs was therefore false and misleading.

48. *Third,* upon information and belief, the NYSERDA OJT Program (PON 3982) application deadline had passed before Plaintiffs and the FLSA Plaintiffs performed any work. Defendants could not have secured a valid grant under this program that was applicable to work performed by Plaintiffs and the FLSA Plaintiffs from June 2025 through August 2025.

49. *Fourth,* Defendants may not have been eligible for the program in the first instance. Upon information and belief, Defendants were not eligible to participate in the NYSERDA OJT Program at all. The program requires that a participating business employ a minimum of two full-time employees who receive IRS W-2 forms, expressly excluding business owners, principals, independent contractors, and interns from this count. Upon information and belief, Defendants did not meet this minimum employee threshold, rendering any purported application by Defendants to participate in the program invalid. Defendants' representations to Plaintiffs that grant funding had been or would be secured were therefore knowingly false at the time they were made.

50. Mr. Mpela's pattern of dishonesty continued throughout Plaintiffs' employment. During the above-referenced videotaped forums, Mr. Mpela made additional representations

regarding payment of Plaintiffs' wages, including that he might need to secure a business or personal loan to compensate Plaintiffs and other similarly situated workers, and that he could not provide a timeline for when payment would be made.

51. As of the filing of this Complaint, no payment has been made. No loan has been secured. Plaintiffs and other similarly situated workers remain entirely uncompensated for work they performed and completed months ago.

52. At all times relevant herein, Defendants failed to provide Plaintiffs with wage notices, in violation of NYLL § 195(1).

53. At all times relevant herein, Defendants failed to provide Plaintiffs with wage statements, in violation of NYLL § 195(3).

54. Defendants' failure to provide Plaintiffs with a compliant notices of their pay rates upon hiring, and accurate pay stubs with each payment throughout their employment, in violation of NYLL § 195(1) and NYLL § 195(3), effectively concealed from Plaintiffs, and interfered with their ability to identify and assess the wage violations committed by Defendants. Plaintiffs' resulting lack of information complicated, or impeded, their efforts to remedy those violations. Because of the resulting underpayment of wages, Plaintiffs were deprived of the opportunity to spend their wages on necessary expenses, including household expenses, food, housing, utilities, and other items; to save their wages in interest-bearing accounts; or to otherwise invest their wages in other ways that could generate additional earnings.

55. As a result of Defendants' violations of the FLSA and NYLL as alleged herein, Plaintiffs have suffered financial loss in that they were never paid wages that they worked for and were owed to them.

56. Defendants were responsible for managing Plaintiffs and were aware of, and permitted, the regular hours worked by Plaintiffs each week.

57. Defendants willfully failed to pay Plaintiffs, and others similarly situated, their earned wages in violation of the FLSA and NYLL as alleged herein.

**Plaintiff Muktadir Khan**

58. Plaintiff Khan was offered a position as a Mentor/Supervisor for Defendants on or around June 20, 2025.

59. As a Mentor/Supervisor Plaintiff Khan guided and supported high school students in exploring green careers and environmental leadership and designed rooftop solar systems.

60. Defendants provided Plaintiff Khan with instruction and guidelines regarding his job duties and responsibilities.

61. As a Mentor/Supervisor Plaintiff Khan was offered an hourly wage of $22.00 per hour, which was memorialized in his offer letter.

62. From June 2025 through August 2025, Plaintiff Khan worked approximately 29 to 35 hours per week.

63. Plaintiff Khan never received payment for his work with Defendants.

64. Plaintiff Khan repeatedly asked Mr. Mpela when his and other workers' wages would be paid.

65. Plaintiff Khan's questions were met by Mr. Mpela with numerous excuses and delays.

66. Defendants failed to provide Plaintiff Khan with a compliant notice of his pay rate and pay stubs throughout his employment, in violation of NYLL § 195(1) and NYLL § 195(3), which effectively concealed from Mr. Khan, and interfered with his ability to identify and assess

the wage violations that were, and remain, ongoing. Mr. Khan's lack of information complicated, or impeded, his efforts to remedy those violations. As a result of not being paid any wages, Mr. Khan was deprived of the opportunity to spend his wages on necessary expenses, including household expenses, food, housing, utilities, and other items; to save his wages in interest-bearing accounts; or to invest his wages in other ways that could generate additional earnings.

67. Mr. Khan has been designated as a class representative for the FLSA Collective Action and the New York class. Mr. Khan is ready, willing and able to accept the responsibilities of being a class representative.

**Plaintiff Julie Liu**

68. Plaintiff Liu was offered a position as a Mentor/Supervisor for Defendants on or around June 19, 2025.

69. As a Mentor/Supervisor Plaintiff Liu guided and supported high school students in exploring green careers and environmental leadership, organized other Mentor/Supervisors and their assignments, and kept track of other Mentor/Supervisors' hours.

70. Defendants provided Plaintiff Liu with instruction and guidelines regarding her job duties and responsibilities.

71. As a Mentor/Supervisor Plaintiff Liu was offered an hourly wage of $27.00 per hour, which was memorialized in an email from Mr. Mpela subsequent to her initial hiring.

72. From June 2025 through August 2025, Plaintiff Liu worked approximately 27 to 32 hours per week.

73. Plaintiff Liu never received payment for her work with Defendants.

74. Plaintiff Liu repeatedly asked Mr. Mpela when her and other workers' wages would be paid.

75. Plaintiff Liu's questions were met by Mr. Mpela with numerous excuses and delays.

76. Defendants failed to provide Plaintiff Liu with a compliant notice of her pay rate and pay stubs throughout her employment, in violation of NYLL § 195(1) and NYLL § 195(3), which effectively concealed from Ms. Liu, and interfered with her ability to identify and assess the wage violations that were, and remain, ongoing. Ms. Liu's lack of information complicated, or impeded, her efforts to remedy those violations. As a result of not being paid any wages, Ms. Liu was deprived of the opportunity to spend her wages on necessary expenses, including household expenses, food, housing, utilities, and other items; to save her wages in interest-bearing accounts; or to invest her wages in other ways that could generate additional earnings.

77. Ms. Liu has been designated as a class representative for the FLSA Collective Action and the New York class. Ms. Liu is ready, willing and able to accept the responsibilities of being a class representative.

## FLSA COLLECTIVE ACTION ALLEGATIONS

78. Plaintiffs bring this action on behalf of themselves and on behalf of all employees similarly situated as authorized under the FLSA, 29 U.S.C. §§ 206 and 216 (b). The employees similarly situated are known as the Collective Class and/or FLSA Plaintiffs.

79. The Collective Class/FLSA Plaintiffs are all persons who are currently or have been employed by the Defendants in the past, at any of the Defendants' locations or any of Defendants' project locations, with substantially similar job requirements and pay provisions as the Plaintiffs, who were performing the same sort of functions/responsibilities for the Defendants, and who have been subjected to Defendants' common practices and policies of failing to pay wages, and failing to furnish wage notices and wage statements, as alleged herein.

80. Upon information and belief, Defendants employed approximately thirty (30) employees, all of whom were subjected to similar payment practices as the Plaintiffs.

81. Defendants treated the Plaintiffs and Collective Class/FLSA Plaintiffs similarly in that the Plaintiffs and all FLSA Plaintiffs: (1) performed similar tasks as described herein; (2) were subject to the same laws and regulations; (3) were paid in the same and/or similar manner; (4) were not paid the statutory minimum wage as required by law; (5) were not provided wage notices in violation of NYLL § 195(1); and (6) were not provided wage statements in violation of NYLL § 195(3).

82. Upon information and belief, Defendants' unlawful conduct has been widespread, repeated and consistent.

83. Defendants are liable under the FLSA and NYLL for failing to properly compensate the Plaintiffs and Collective Class/FLSA Plaintiffs, and as such, notice should be sent to the Collective Class. Upon information and belief, there are numerous similarly situated employees of Defendants who have not been properly compensated by Defendants and who would benefit from the issuance of a Court-supervised notice of the present lawsuit, as well as the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

84. The questions of law and fact common to the putative class predominate over any questions affecting any individual members, and the claims of the Plaintiffs are typical of the claims of the putative class.

85. Plaintiffs and their counsel will fairly and adequately protect the interests of the putative class and a collective action is superior to other available methods for the fair and efficient adjudication of this controversy.

86. Furthermore, inasmuch as the damages suffered by some of the Collective Class/FLSA Plaintiffs may be relatively small, the expense and burden of individual litigation make it virtually impossible for the FLSA Plaintiffs to individually seek redress from the wrongs done to them.

## NEW YORK CLASS ALLEGATIONS

87. Plaintiffs Khan and Liu bring this complaint, pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all workers employed under Defendant Nalane's Green Apprentice Program at any time from June 2025 through the date of final judgment in this action (the "New York Class").

88. *Numerosity:* The members of the Rule 23 Class are so numerous that joinder of all members in the case would be impracticable. Plaintiffs reasonably estimate there are at least 30 Class Members who reside and work in New York. The precise number of Class Members should be readily available from a review of Defendants' personnel records.

89. *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 Class Members and common questions of *both* law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a. whether Defendants failed to pay Plaintiffs;

b. whether Defendants violated the NYWTPA by failing to provide Plaintiffs and Class Members with sufficiently detailed wages statements, as required by NYLL § 195(3);

c. whether Defendants violated the NYWTPA by failing to provide Plaintiffs and Class Members with a written statement upon hiring, required by NYLL § 195(1);

d. whether Defendants breached the terms of Plaintiffs' employment;

e. whether Defendants made uniform representations to Class Members that their wages would be funded through a NYSERDA government grant program;

f. whether Defendants' representation that a NYSERDA grant would fund Class Members' wages was false at the time it was made.

g. whether Defendants knew, or reasonably should have known, at the time of Class Members' hiring, that the NYSERDA grant could not serve as a source from which to pay Class Members' wages;

h. whether Class Members' reliance on Defendants' representations was reasonable under the circumstances;

i. whether Defendants were unjustly enriched by receiving the benefit of Class Members' labor without compensation;

j. whether Plaintiffs and the members of the Class are entitled to damages, and if so, the method by which such damages should be calculated; and

k. whether Defendants are liable for the attorneys' fees and costs of the members of the Class.

90. *Typicality:* Plaintiffs' claims are typical of those of the Rule 23 Class in that the Plaintiffs and all other members suffered damages as a direct and proximate result of Defendants' policies and practices. Plaintiffs' claims arise from the same policies, practices, and course of conduct as all other Rule 23 Class Members' claims and Plaintiffs' legal theories are based on the same legal theories as all other Rule 23 Class Members, as detailed above.

91. *Adequacy:* Plaintiffs will fully and adequately protect the interests of the Rule 23 New York Class. Furthermore, Class Counsel, Bell Law Group, PLLC are highly qualified to litigate Plaintiffs' and the class's claims.

92. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, inter alia, it is economically unfeasible for the Rule 23 Class Members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual, along with the fear of reprisal by their employer.

93. The case will be manageable as a class action because the Defendants should have payroll systems that will allow the wage-and-hour damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate.

94. Defendants have acted on grounds generally applicable to the Class, thereby making relief, including declaratory and/or injunctive relief, appropriate for the Class.

## FIRST CAUSE OF ACTION
### FLSA 29 U.S.C. § 201, *et seq.* – Failure to Pay Minimum Wage

95. Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if fully rewritten herein.

96. Defendants violated the FLSA, 29 U.S.C. § 206(a) by not paying Plaintiffs minimum wage for all hours worked.

97. Defendants knew or should have known of the minimum wage payment requirement of the FLSA.

98. Defendants knowingly and willfully failed to properly pay Plaintiffs when they failed to compensate Plaintiff for any hours worked during their employment.

99. Defendants' willfulness is further demonstrated by the fact that, as set forth in ¶¶44–49 above, Defendants' representations regarding grant funding were false at the time of hiring, and Defendants had no legitimate funding mechanism from which to pay Plaintiffs at any point during their employment.

100. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to suffer damages and are entitled to recover unpaid wages, liquidated damages, interest, attorneys' fees and costs, and all other remedies available under the FLSA.

**SECOND CAUSE OF ACTION**
**NYLL Art. 6 § 191, *et seq.* – Unpaid Wages**

101. Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if fully rewritten herein.

102. NYLL § 191(1)(d) provides that workers "shall be paid…in accordance with the agreed terms of employment."

103. As described above, Defendant is an employer within the meaning of the NYLL, while Plaintiff and FLSA Plaintiffs are employees within the meaning of the NYLL.

104. Plaintiffs worked for Defendants for approximately three months.

105. Defendants failed to pay Plaintiffs' wages for all hours worked during their employment.

106. Plaintiffs are entitled to recover from Defendants their unpaid wages, in an amount to be determined at trial, liquidated damages, interest, attorneys' fees and costs pursuant to NYLL § 198 *et seq.*

**THIRD CAUSE OF ACTION**
**NYLL § 195(1) – Failure to Provide Wage Notices**

107. Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if fully rewritten herein.

108. NYLL § 195 (1) requires that employers furnish employees with a wage notice containing the employee's rate of pay, manner of payment, regular pay date, and employer contact information.

109. As alleged herein, Defendants willfully and knowingly failed to furnish Plaintiffs and the FLSA Plaintiffs with wage notices at any time during their employment with Defendants in violation of NYLL § 195(1).

110. Wage notices provide employees with vital information about their pay and without accurate notices and statements Plaintiffs and the FLSA Plaintiffs could not confirm that they were being paid correctly under federal and state law and in accordance with the terms of their employment and what had been agreed upon as their hourly rate.

111. By failing to provide Plaintiffs and the FLSA Plaintiffs with accurate wage notices that disclose the correct straight and overtime rates of pay Plaintiff and the FLSA Plaintiffs were to receive, Plaintiff and the FLSA Plaintiffs were denied relevant information needed to determine whether they were being paid correctly.

112. Plaintiffs and the FLSA Plaintiffs were deprived of their correct pay throughout the entire duration of their employment and suffered substantial financial harm and loss as a result.

113. As a result of Defendants' willful failure to provide Plaintiffs and the FLSA Plaintiffs with a wage notice in violation of NYLL § 195(1), Plaintiffs and the FLSA Plaintiffs are entitled to recover all damages available, including statutory penalties up to $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

**FOURTH CAUSE OF ACTION**
**NYLL § 195(3) – Failure to Provide Wage Statements**

114. Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if fully rewritten herein.

115. NYLL § 195(3) requires that employers furnish employees with accurate wage statements/paystubs at the end of each pay period, which are to include the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

116. As alleged herein, Defendants willfully and knowingly failed to furnish Plaintiffs and the FLSA Plaintiffs with accurate wage statements and/or paystubs at any time during their employment at Defendants in violation of NYLL § 195(3).

117. Wage statements provide employees with vital information about their pay and without accurate wage statements Plaintiffs and the FLSA Plaintiffs could not confirm that they were being paid correctly under federal and state law and in accordance with the terms of their employment and what had been agreed upon.

118. By failing to provide Plaintiffs and the FLSA Plaintiffs with accurate wage statements that disclose the correct straight and overtime rates of pay Plaintiffs and the FLSA Plaintiffs received, Plaintiffs and the FLSA Plaintiffs were denied relevant information needed to determine whether they were being paid correctly.

119. Plaintiffs and the FLSA Plaintiffs were deprived of their correct pay throughout the entire duration of their employment and suffered substantial financial harm and loss as a result.

120. As a result of Defendants' willful failure to provide Plaintiffs and the FLSA Plaintiffs with a wage statement in violation of NYLL § 195(3), Plaintiffs and the FLSA Plaintiffs are entitled to recover all damages available, including statutory penalties up to

$5,000.00 per employee, together with costs and reasonable attorneys' fees, as well as any other appropriate relief under NYLL § 198(1)(d).

**FIFTH CAUSE OF ACTION**
**NYLL § 195(4) – Failure to Keep Accurate Records**

121. Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if fully rewritten herein.

122. Upon information and belief, Defendants did not maintain, establish and preserve Plaintiffs' and the FLSA Plaintiffs' weekly payroll records for a period of not less than six years, as required by NYLL § 195(4).

123. Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs and the FLSA Plaintiffs.

124. Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned was not in good faith.

125. As a result of Defendants' unlawful conduct, Plaintiffs and the FLSA Plaintiffs have sustained damages, including loss of earnings, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and reasonable attorney fees, pursuant to NYLL.

**SIXTH CAUSE OF ACTION**
**Breach of Contract**

126. Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if fully rewritten herein.

127. Pursuant to the agreement made between Plaintiffs and Defendants, Defendants were contractually obligated to pay Plaintiffs an hourly rate of between $22.00 to $27.00 per hour for the entire duration of their employment.

128. Defendants have refused to pay Plaintiffs the wages owed to them for the work they performed for Defendants from June 2025 through August 2025.

129. Defendants' failure to pay Plaintiffs the agreed upon wages is a breach of the contract between Plaintiffs and Defendants.

130. Plaintiffs performed all duties and obligations of their employment.

131. As a result of Defendants' breach, Plaintiffs have suffered financial damages.

**SEVENTH CAUSE OF ACTION**
**Quantum Meruit/Unjust Enrichment**

132. Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if fully rewritten herein.

133. From June 2025 through August 2025 Plaintiffs and the FLSA Plaintiffs performed their duties as employees of Defendants.

134. Defendants benefited from Plaintiffs' work and employee duties.

135. Defendants refused to pay Plaintiffs and the FLSA Plaintiffs for any of their work.

136. Defendants were unjustly enriched by receiving the benefit of Plaintiffs' and the FLSA Plaintiffs' work without compensating Plaintiffs and the FLSA Plaintiffs.

137. Defendants had no lawful right or entitlement to Plaintiffs' or the FLSA Plaintiffs' work without compensating Plaintiffs or the FLSA Plaintiffs.

138. Plaintiffs and the FLSA Plaintiffs are entitled to their fair compensation for the work performed for Defendants.

**EIGHTH CAUSE OF ACTION**
**Promissory Estoppel**

139. Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if fully rewritten herein.

140. As alleged herein, Plaintiffs' reliance on Defendants' promises was reasonable. Defendants held themselves out as having secured government grant funding to cover Plaintiffs' wages and made specific representations to that effect. Plaintiffs had no reason to independently investigate the eligibility requirements, application deadlines, or reimbursement structure of the NYSERDA On-the-Job Training Program. The falsity of Defendants' representations was not apparent from the face of the offer, and a reasonable person in Plaintiffs' position would have accepted the representations as true.

141. Plaintiffs and the FLSA Plaintiffs were injured by their reliance on Defendants' promises in that they undertook and provided substantial labor and services for the benefit of Defendants. But for Defendants' promises, Plaintiffs and the FLSA Plaintiffs would not have undertaken and provided substantial work, labor and services for the benefit of Defendants.

142. Because of the foregoing, Plaintiffs and the FLSA Plaintiffs have suffered financial damages.

**NINTH CAUSE OF ACTION**
**Fraudulent Inducement/Misrepresentation**

143. Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if fully rewritten herein.

144. Defendants offered and represented to Plaintiffs and the FLSA Plaintiffs that they would be paid $22.00 to $27.00 per hour for their work performed for Defendants from June 2025 through August 2025.

145. Defendants told Plaintiffs and the FLSA Plaintiffs that they would be paid through a grant from the New York State Energy Research and Development Authority ("NYSERDA") -- specifically, NYSERDA's On-the-Job Training for Energy Efficiency and Clean Technology Program (PON 3982). This promise was false. As set forth in paragraphs 44 through 49 above, the NYSERDA Grant could not possibly have served as a source of funds from which to pay Plaintiffs and the FLSA Plaintiffs their wages, for at least four independent reasons: (i) Plaintiffs began work before NYSERDA approved any New Hire Application, rendering them categorically ineligible; (ii) the program provides reimbursement only after wages are already paid in full — it cannot serve as an advance funding source; (iii) upon information and belief, the program's application deadline had passed before Plaintiffs performed any work; and (iv) upon information and belief, Defendants did not meet the program's minimum employee eligibility requirements.

146. Defendants did not obtain any valid grant applicable to Plaintiffs' employment. Even if Defendants had secured a grant, the program's structure was such that Plaintiffs could not have been paid through it for all of the reasons set forth above.

147. Defendants have refused to pay Plaintiffs and the FLSA Plaintiffs for their work, and subsequently cannot be paid via a subsequently secured government grant.

148. Upon information and belief, Defendants knew, or reasonably should have known, at the time they represented to Plaintiffs that their wages would be funded through the NYSERDA Grant, that this representation was false. Among other things, Defendants knew or

should have known: (i) that Plaintiffs had already begun work before any NYSERDA New Hire Application had been approved; (ii) that the program reimburses wages already paid and cannot serve as an advance funding source; (iii) that the program's application deadline had passed before Plaintiffs performed any work; and (iv) that Defendants lacked the minimum number of qualifying W-2 employees required for program participation.

149. Defendants have refused to pay Plaintiffs and the FLSA Plaintiffs for their work.

150. Defendants deceived Plaintiffs in that they had no intent and have no intent to pay Plaintiffs and the FLSA Plaintiffs for their work.

151. Plaintiffs and the FLSA Plaintiffs believed and justifiably relied upon Defendants' offers that they would be paid $22.00 to $27.00 per hour for their work for Defendants.

152. Defendant Mpela is personally liable for the fraudulent inducement alleged herein. The misrepresentations described herein, including the false claim that a NYSERDA grant had been secured to fund Plaintiffs' wages, were made personally by Defendant Mpela, in his individual capacity and as founder and executive director of Defendant Nalane, directly to Plaintiffs and the FLSA Plaintiffs. Defendant Mpela knew or should have known that these representations were false at the time they were made, and he made them for the purpose of inducing Plaintiffs and the FLSA Plaintiffs to continue performing work without compensation.

153. Defendant Nalane is independently liable for the fraudulent inducement alleged herein. All misrepresentations regarding payment of wages and grant funding were made by Defendant Mpela on behalf of Defendant Nalane, within the scope of his authority as its founder and executive director, and for the purpose of inducing Plaintiffs to perform work for Defendant Nalane's benefit. Defendant Nalane received the direct benefit of Plaintiffs' labor procured

through those misrepresentations and is independently liable for the fraudulent conduct of its agent.

154. Plaintiffs and the FLSA Plaintiffs have been damaged as a result of Defendants' misrepresentations.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs and the FLSA Plaintiffs demand judgment against Defendants as follows:

155. Designation of this action as an FLSA collective action on behalf of the Plaintiffs and the FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216 (b) to the FLSA Plaintiff, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing Individual Consents to Sue pursuant to 29 U.S.C. § 216 (b);

156. A judgment declaring that the practices complained of herein are unlawful and in violation of the FLSA and NYLL;

157. All damages that Plaintiffs and the FLSA Plaintiffs have sustained as a result of the Defendants' unlawful conduct in violation of the FLSA and NYLL as alleged herein, including all unpaid wages;

158. All damages and/or statutory penalties that are recoverable as a matter of law for Defendants' willful violations of NYLL § 195(1);

159. All damages and/or statutory penalties that are recoverable as a matter of law for Defendants' willful violations of NYLL § 195(3);

160. All liquidated damages, punitive damages, and/or any other statutory penalties that are recoverable as a result of the Defendants' willful violations of the FLSA and NYLL;

161. All attorneys' fees, costs, expenses and disbursements incurred by the Plaintiffs and the FLSA Plaintiffs in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs, and awards of a service payment to Plaintiffs Khan and Liu;

162. A judgment for Plaintiffs against Defendants for compensatory damages for breach of their employment contracts;

163. A judgment for Plaintiffs against Defendants for compensatory damages for quantum meruit, unjust enrichment and promissory estoppel;

164. A judgment for Plaintiffs against Defendants for compensatory damages, pecuniary losses, and punitive damages as a result of the fraudulent inducement;

165. Pre-Judgement and Post-Judgment interest as provided by law;

166. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

167. An order prohibiting Defendants from any retaliation against Plaintiffs and/or the FLSA Plaintiffs for participation in this litigation; and

168. Such other and further relief as this Court deems just and proper

Dated: Syosset, New York
April 24, 2026

Respectfully submitted,
BELL LAW GROUP, PLLC

By: ______________________________
Chaya M. Gourarie, Esq.
Elisabeth A. Schiffbauer, Esq.
Bell Law Group, PLLC

116 Jackson Avenue
Syosset, New York 11791
T. 516-280-3008
CG@belllg.com
eschiffbauer@belllg.com
*Attorneys for Plaintiffs and the Putative Class*